**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**CLINTON SIMPSON**                                                                                    **PLAINTIFF**

**V.**                                                                                   **NO. 4:16-CV-208-DMB-JMV**

**BANK OF AMERICA, NA;
COUNTRYWIDE HOME LOANS
SERVICING; and EMILY KAYE
COURTEAU, Substitute Trustee**                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This declaratory judgment action is before the Court on the motion for judgment on the pleadings, Doc. #18, and the motion for summary judgment, Doc. #23, filed by Bank of America, N.A.

**I
Procedural History**

**A. State Court Proceedings**

On September 15, 2016, Clinton Simpson filed a "Complaint for Declaratory and Injunctive Relief" in the Chancery Court of Sunflower County, Mississippi, against Bank of America, N.A. ("BANA"); Countrywide Home Loans Servicing; and Emily Kaye Courteau. Doc. #2. Clinton[1] alleges that the defendants are engaging in foreclosure proceedings against certain property owned by him "in violation of the Defendant's own servicing standards and administrative procedures for the processing of loan modification requests pursuant to the [Home Affordable Modification Program (HAMP)]." *Id*. at ¶ 7. On these allegations, Clinton seeks:

> [A] judgment declaring that the actions of the Defendants, Countrywide and Bank of America did constitute a violation of administrative servicing standards under the Home Affordable Modification Program;

---

[1] To avoid confusion, since Debbie Simpson is mentioned below, Clinton's first name is used herein.

> [A] temporary restraining order and preliminary injunction enjoining the Defendants from proceeding with the foreclosure sale of the real property described herein …
>
> [A] judgment awarding to Plaintiff compensatory and punitive damages, attorney's fees, expenses and costs of court; [and]
>
> [An a]ward [of] such other and further relief as the Court deems just and proper.

*Id.* at 3 (paragraph lettering omitted).

The same day as he filed the complaint, Clinton filed a motion seeking a temporary restraining "order enjoining the Defendants from proceeding with a foreclosure sale …." Doc. #1-1 at 13–14. Five days later, on September 20, 2016, the state court granted Clinton's motion. *Id.* at 20–21.

On October 20, 2016, BANA, "with the consent and approval" of Courteau, removed the state action to this Court based on diversity jurisdiction.[2] Doc. #1.

### B. Federal Court Proceedings

After removal, BANA and Courteau filed answers to Clinton's state court complaint. Doc. #3; Doc. #5. On March 31, 2017, following a period of discovery, BANA filed a motion for judgment on the pleadings, Doc. #18, which Courteau joined on May 9, 2017, Doc. #21. On July 21, 2017, BANA filed a motion for summary judgment and an accompanying memorandum. Doc. #23; Doc. #24. Five days later, Courteau filed a joinder purporting[3] to join in both the motion and the memorandum. Doc. #25. Clinton has not responded to either motion or the joinder.

---

[2] On July 27, 2017, this Court issued an order directing BANA to show cause why this action should not be dismissed for lack of diversity jurisdiction. Doc. #26. BANA responded to the order to show cause on August 3, 2017. Doc. #28. The response properly establishes diversity jurisdiction.

[3] The motions deadline in this case was July 21, 2017. Doc. #10. Accordingly, the joinder was untimely. However, in the interest of judicial efficiency, "where the Court grants summary judgment in a particular party's favor, it can also grant summary judgment *sua sponte* in favor of another party who is entitled to judgment as a matter of law assuming it is based on the same determinative issues." *Campbell v. City of Indianola*, 117 F.Supp.3d 854, 876 n.25 (N.D. Miss. 2015). Consistent with this rule, the Court will give effect to Courteau's joinder.

# II
# Standard of Review

BANA has filed a motion for summary judgment and a motion for judgment on the pleadings. Because this Court concludes below that the motion for summary judgment, which includes a factual attack on Clinton's standing, should be granted, it need not address the motion for judgment on the pleadings.

### A. Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial,

the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

### B. Standing Challenge in Motion for Summary Judgment

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (internal quotation marks and alterations omitted). "Granting summary judgment is an inappropriate way to effect a dismissal for lack of subject matter jurisdiction." *Bank One Tex. v. United States*, 157 F.3d 397, 403 n.12 (5th Cir. 1998). Accordingly, a court should construe a motion for summary judgment predicated on a lack of jurisdiction as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Fox v. Leavitt*, 572 F.Supp.2d 135, 140 n.5 (D.D.C. 2008) ("Although CMS's motion requests summary judgment [,] ... the request to dismiss based on ... lack of standing is properly treated as a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").

"A motion to dismiss for lack of standing may be either 'facial' or 'factual.'" *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). Where, as here, "the defendant submits affidavits, testimony, or other evidentiary materials" in support of the motion, the attack on standing is considered factual. *Id.* (internal quotation marks omitted). "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Id.* (internal quotation marks omitted).

## III
## Factual Background

### A. Promissory Note and Deed of Trust

On June 25, 1999, Clinton Simpson and Debbie Simpson executed a promissory note

promising to repay to the Community Bank of Mississippi a $64,417.00 loan at a 7.5% annual interest rate. Doc. #23-1. Repayment was to be made by monthly payments of $450.41. *Id.* The promissory note was secured by a deed of trust for property located at 205 South Walker Street, Indianola, Mississippi. Doc. #23-3.

Over the ensuing years, the deed of trust was reassigned three times, most recently on April 5, 2007, when it was assigned from Mortgage Electronic Registration Systems, Inc. ("MERS") to "Countrywide Home Loans Servicing, LP their Successors and/or Assigns." Doc. #23-4; Doc. #23-3. On April 27, 2009, Countrywide Home Loans changed its name to BAC Home Loans Servicing, LP. Doc. #23-2 at ¶ 6. BAC Home Loans Servicing, LP then merged into BANA. *Id.*

### B. Requests for Mortgage Assistance

By the year 2013, the Simpsons had not made a payment on their note since October 22, 2012, when they brought the loan current through July 2011. Doc. #23-2 at ¶¶ 7–8. On May 6, 2013, Clinton filed a "Request for Mortgage Assistance" ("RMA"). Doc. #23-6. On May 15, 2013, BANA sent the Simpsons a letter stating, "We are unable to offer you loan assistance options because you did not provide us with the required documents." Doc. #23-7 at 1. Clinton re-filed an RMA on June 20, 2013. Doc. #23-6. On June 28, 2013, BANA rejected Clinton's second RMA for failure to submit required documents. Doc. #23-8.

The Simpsons appealed the denial of their RMAs and, on August 5, 2013, BANA issued a revised decision. Doc. #23-9. The revised decision states:

> Your original reason for appealing the decline decision, for Request Incomplete, was valid. However, as we reviewed the new documentation you provided to support your appeal, we found your loan is not eligible for a modification for other reason(s) as explained below.
>
> We are unable to assist you because the partial claim amount needed to make your loan affordable under FHA-HAMP exceeds that program's maximum of 30% of the unpaid principal balance as of the date of default.

*Id*. (emphases omitted).

Sometime in early 2014, the Simpsons submitted a third RMA. *See* Doc. #23-10. This request was denied on March 14, 2014, for failure to submit required documents. *Id*. Sometime later, the Simpsons submitted a fourth RMA. Doc. #23-11. This request was denied on October 18, 2014, once again on the ground that the Simpsons failed to submit required documents. *Id*. Shortly after the October rejection letter, Clinton contacted BANA "to discuss available loan assistance options." Doc. #23-13. On November 24, 2014, BANA sent Clinton a letter rejecting a loan modification. *Id*. The letter provided specific reasons Clinton did not qualify for various FHA loan modification programs. *Id*.

On December 12, 2014, the Simpsons' counsel wrote to BANA requesting a re-evaluation of the Simpsons' eligibility for loan modification programs. Doc. #23-12. Four days later, on December 16, 2014, BANA denied the request "for the original reason(s) previously communicated …." Doc. #23-14.

In early 2015, the Simpsons again applied for an RMA. *See* Doc. #23-15. This request was denied on March 27, 2015, for failure to submit required documents. *Id*. Sometime after this final rejection, BANA scheduled a foreclosure sale of the Simpsons' property for September 22, 2016. Doc. #3 at ¶ 6. As explained above, the state court enjoined this foreclosure sale.

## IV
## Analysis

Beyond seeking a declaratory judgment that BANA violated HAMP, Clinton appears to seek: (1) damages for BANA's alleged violation of its internal servicing standards and HAMP; and (2) a temporary restraining order preventing the scheduled foreclosure sale on the grounds that the sale violates BANA's internal servicing standards and HAMP regulations. BANA argues that

Clinton lacks standing to assert his claims and that BANA did not violate HAMP or its internal policies. Doc. #24 at 4, 6.

## A. Claims Premised on HAMP Violations

> HAMP was created by Congress under the Emergency Economic Stabilization Act of 2008 and is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The Servicer Participation Agreements (SPA) between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines.

*Speleos v. BAC Home Loans Servicing, L.P.*, 755 F.Supp.2d 304, 306 (D. Mass. 2010).

Because HAMP creates obligations on the part of a loan servicer to Fannie Mae, rather than a borrower, courts throughout this circuit have held that a borrower lacks standing to pursue claims premised on violations of HAMP. *See, e.g., Burton v. Ocwen Loan Servicing LLC*, No. 3:14-cv-118, 2015 WL 5295202, at *7–9 (N.D. Miss. Sep. 10, 2015); *Wildy v. Wells Fargo Bank, NA*, No. 3:12-cv-1831, 2012 WL 5987590, at *4 (N.D. Tex. Nov. 30, 2012) ("[C]ourts in the Fifth Circuit have repeatedly held that borrowers are not third-party beneficiaries to the HAMP ... agreements, and thus lack standing to challenge the lender's compliance with the[] federal program[].") (collecting cases). In accordance with these decisions, the Court concludes that Clinton lacks standing to pursue claims, including his declaratory judgment action, insofar as such claims are based on alleged violations of HAMP.[4]

## B. Claims Premised on Internal Policy Violations

Because internal company policies relate to a corporate employee's authority to act, a

---

[4] "Standing is a concept distinct from the concept of private rights of action." *La. Landmarks Soc., Inc. v. City of New Orleans*, 85 F.3d 1119, 1122 n.3 (5th Cir. 1996). Even if a borrower had standing to assert claims premised on HAMP violations, courts have regularly held that HAMP does not create a private right of action. *See, e.g., Reyes v. Wells Fargo Bank, N.A.*, No. 14-CA-156, 2014 WL 12489702, at *2 (W.D. Tex. July 7, 2014) (collecting cases); *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116–17 (11th Cir. 2012). Even if Clinton had standing and a private right of action, he has introduced no evidence showing a violation of HAMP.

mortgagor generally lacks standing to challenge an action as a violation of internal policy. *See generally Hines v. Wells Fargo Bank, N.A.*, No. H-13-167, 2014 WL 897805, at *5 (S.D. Tex. Mar. 6, 2014) ("Hines lacks any standing to contest MERS's assignment of the note and deed under ... MERS's internal rules ... because any alleged violations are voidable, not void, and immune from challenge by a mere obligor."). However, a mortgagor may have standing to enforce a corporate policy if the mortgagee represented to the mortgagor that it would follow its policies. *See generally X-Cel Sales, LLC v. A.O. Smith Corp.*, No. CV-11-1082, 2012 WL 5269302, at *4 (D. Ariz. Oct. 24, 2012) ("[T]he question is whether A.O. Smith represented to X–Cel that it was following its own policies when in fact it was not. This is the allegation that gives rise to the causes of action for negligence, fraud, and breach of implied contractual duty."). To the extent Clinton brings claims premised on BANA's statements that the denials of the RMAs were consistent with company policy, summary judgment must be granted because Clinton has introduced no evidence showing a violation of an internal policy.

### C. Summary

Clinton has asserted claims based on violations of HAMP and internal BANA policy. Because Clinton may not assert a claim based on a HAMP violation and because Clinton has not shown a violation of a relevant internal policy, the motion for summary judgment, which is in part a motion to dismiss for lack of subject matter jurisdiction, Doc. #23, will be granted. The motion for judgment on the pleadings, Doc. #18, will be denied as moot.

### V
### Conclusion

BANA's motion for summary judgment [23], which was joined by Courteau, is **GRANTED**. Clinton's claims based on violations of HAMP are **DISMISSED** for lack of standing. Clinton's claims based on violation of BANA's internal policies are **DISMISSED** for

8

the absence of evidence showing such violation.  The motion for judgment on the pleadings [18] is **DENIED as moot**.

**SO ORDERED**, this 5th day of October, 2017.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**